```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
M-101, LLC d/b/a M-101, LLC, a          :
Tennessee limited liability company,    :
                        Plaintiff,      :    06 Civ. 12938 (DLC)
                                        :
             -v-                        :    OPINION AND ORDER
                                        :
iN DEMAND L.L.C., a Delaware limited    :
liability company,                      :
                        Defendant.      :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:

Orin Snyder
Aric H. Wu
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

For Defendant:

Christian D. Carbone
Leily Lashkari
Wook J. Hwang
Loeb & Loeb LLP
345 Park Avenue
New York, New York 10154

DENISE COTE, District Judge:

This action arises out of a contract to produce, market, and broadcast a series of television specials profiling legendary musicians. The plaintiff M-101, LLC ("M-101") is a company that was founded to produce these specials. The defendant, iN Demand, L.L.C. ("iND"), owns and operates iN

Demand Networks, an aggregator and supplier of Video-on-Demand, Pay-Per-View, and high-definition television programming. This lawsuit was originally filed in Arizona state court and was later removed to federal court and transferred to this district. At a conference held on September 27, 2007, a schedule was set for the litigation. This schedule was extended by Order of November 30; fact discovery concludes on May 1, 2008.

M-101 filed an amended complaint on September 7, claiming breach of contract, fraud, and breach of the covenant of good faith and fair dealing. On October 4, iND moved to dismiss only the claims for fraud and breach of the covenant of good faith and fair dealing. For the reasons described below its motion is denied.

BACKGROUND

The following facts are taken from the Amended Complaint ("Complaint") and the contract between the parties.[1] In November 2003, M-101 completed the pilot episode of a series of television specials that it wished to market to cable broadcasters. The pilot episode ("pilot") featured soul music legend Al Green, along with a number of prominent guest artists.

---

[1] The contract is considered even though it was not attached to the Complaint, because it is a document that the plaintiff relied upon in bringing suit. Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000).

2

After taping the pilot, M-101 began discussions with a number of potential broadcast partners. In or around the middle of 2004, it began discussions with iND, which was interested in obtaining high-definition music television programming for its networks. iND counted among its members three major multiple-system operators ("MSOs"). In December 2004, Robert Jacobson, iND's President and CEO, acknowledged that marketing support from these MSOs "and their access to controlled media in their systems" were critical to a deal between the parties. In February 2005, Jacobson told M-101 that iND had "gotten the MSOs to sign-off on the marketing commitment." In April of that year, Jacobson represented that "the MSOs are squarely on board." This commitment was a significant factor in M-101's decision to enter a contract with iND.

The parties entered an agreement ("Agreement"), which was set forth in a Term Sheet of April 22, 2005 and executed on June 7, 2005. The Agreement provided for the licensing, promotion, and broadcast of a series of music television specials to be produced by M-101. It included a schedule of dates by which M-101 would have the opportunity to deliver letters of intent ("LOIs") describing individual specials, to be followed by development of the specials. The Agreement included a list of pre-approved featured artists. iND had to give its approval for specials to feature artists not on this list, but it was not

permitted "unreasonably" to withhold such approval.  iND agreed to pay licensing fees for each episode and to "provide each Episode with a reasonable marketing and advertising campaign which shall include $5 million of MSO media."

iND broadcast the pilot as planned.  In preparing its next special, M-101 engaged the services of country music artist Hank Williams, Jr. ("Williams").  Williams was not on the Agreement's list of pre-approved artists, but he was an appropriate choice for iND's viewing demographic.  iND initially expressed interest in a special featuring Williams ("Hank Williams Special"), and M-101 worked with Williams' management to contact potential guest artists.  Days before the November 15 LOI was due, however, iND rejected the Hank Williams Special without explanation, leaving M-101 unable to secure a different feature artist for that LOI deadline.

In preparation for the next LOI deadline, M-101 pursued discussions with music legend Stevie Wonder ("Wonder"), who was included on the list of pre-approved artists.  A few weeks before the deadline, Jacobson stated in an e-mail that iND had "shifted direction" in its programming and anticipated undergoing a "complete re-brand" in April 2006, in which "[m]usic is expected to play little if any rol[e] in our programming line-up."  Jacobson advised M-101 that iND did not want to license or schedule music programming.  He advised M-101

that the MSOs shared iND's "shift in philosophies" and had "likely moved on." M-101 submitted a timely LOI for a special featuring Wonder ("Stevie Wonder Special"). This LOI was rejected.

DISCUSSION

Under Rule 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Rule requires that a complaint based on misstatements "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted). Under Rule 9(b) "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted). The inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

circumstantial evidence of conscious misbehavior or recklessness." Id. at 290-91 (citation omitted).

iND first argues that the Complaint fails to state a claim for fraud because the allegations supporting this cause of action are duplicative of those supporting M-101's breach of contract claim. "Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." Id. at 291 (citation omitted).[2] Where a fraud claim is brought alongside a breach of contract claim, the fraud claim will be dismissed if it is not sufficiently distinct from the breach of contract claim. The plaintiff may distinguish the two by (1) demonstrating a legal duty separate from the duty to perform under the contract, (2) demonstrating a fraudulent misrepresentation collateral or extraneous to the contract, or (3) seeking special damages caused by the misrepresentation and unrecoverable as contract damages. Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183-84 (2d Cir. 2007).

---

[2] All parties have relied on New York law to defend their claims in this diversity action. The parties having consented to the application of forum law, that consent is sufficient to end the choice of law inquiry. 3Com Corp. v. Banco do Brasil, S.A., 171 F.3d 739, 743 (2d Cir. 1999).

6

> New York distinguishes between a promissory statement
> of what will be done in the future that gives rise
> only to a breach of contract cause of action and <u>a
> misrepresentation of a present fact</u> that gives rise to
> a separate cause of action for fraudulent inducement.
> Hence, a claim based on fraudulent inducement of a
> contract is separate and distinct from a breach of
> contract claim under New York law.

<u>Id.</u> at 184 (citation omitted) (emphasis supplied). In contrast to "contractual promises regarding prospective performance," a "misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty." <u>Id.</u> (citation omitted).

M-101 alleges that iND induced it to enter the contract by making a misrepresentation of present fact regarding marketing commitments by third-party MSOs. Although it is related to the subject of the contract, M-101's fraud claim is based on more than a statement of the defendant's intent to perform the contract. See <u>Telecom Int'l Am., Ltd. v. AT & T Corp.</u>, 280 F.3d 175, 196 (2d Cir. 2001). This allegation pleads a fraud claim that is collateral and extraneous to the contract claim.

iND's effort to distinguish the Second Circuit's recent decision in <u>Merrill Lynch</u> fails. iND argues that <u>Merrill Lynch</u> involved breach of contractual warranties, rather than contractual agreements to perform. The <u>Merrill Lynch</u> court's discussion of present and future statements of fact was not

7

limited to and did not depend upon the presence of a warranty. See Merrill Lynch, 500 F.3d at 183-84. Indeed, after stating the general principle, it added that alleged misrepresentation of present fact could support a fraudulent inducement claim even when the misrepresentation would breach a contractual warranty. Id. at 184.

iND argues, further, that the Complaint's allegation that iND did not have a commitment from the MSOs during the contract negotiations is contradicted by its admission that the pilot was broadcast. There is no necessary inconsistency between these factual assertions and their joint presence in the Complaint does not require dismissal of the fraud claim.

iND next argues that M-101 has not alleged its fraudulent intent with sufficient particularity. The Complaint supports a strong inference of fraudulent intent because it alleges both motive and opportunity and conscious misbehavior or recklessness. For example, the Complaint asserts that iND understood the importance of the MSOs' marketing commitment to M-101's decision to enter into the Agreement with iND, and misrepresented the status of that commitment in order to procure a contract with M-101. The motion to dismiss the fraud claim is therefore denied.[3]

---

[3] Because the plaintiff has adequately pleaded a claim for fraud it is unnecessary at this time to address the extent to which

Finally, it is undisputed that the claim for breach of the covenant of good faith and fair dealing is based upon the same facts as the contract claim, and the defendant seeks to have the breach of covenant claim dismissed as duplicative. The plaintiff argues that it should be permitted to plead this claim as an alternative to the contract claim since the defendant may assert technical defenses to the breach of contract claim which would fail to defeat its alternative claim. As this issue will not affect the scope of discovery, the motion to dismiss the breach of the covenant claim is denied. The defendant may renew its argument at summary judgment.

CONCLUSION

The defendant's October 4, 2007 partial motion to dismiss is denied.

SO ORDERED.

Dated:   New York, New York
         December 3, 2007

                              _____
                                   DENISE COTE
                              United States District Judge

---

the plaintiff may be able to recover damages under its fraud claim that it could not otherwise recover solely for a breach of contract.

9